UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JASON JONES and HEATHER
CLARK,

      Plaintiffs,

v.                                      Case No: 5:23-cv-380-JSM-PRL

TOWN OF MCINTOSH,

      Defendant.

_____

## ORDER

This action brought under 42 U.S.C. § 1983 presents a First Amendment challenge to the Land Development Code for the Town of McIntosh. The case is currently before the Court for consideration of Plaintiffs' amended opposed motion to compel, to which Defendant has filed a response. (Docs. 24 & 26). As set forth below, Plaintiffs' motion to compel is due to be granted in part and denied in part.

### I.    Background

This action arises out of a disagreement between the Town of McIntosh ("the Town") and Plaintiffs Jason Jones and Heather Clark, residents of the Town's historic district. As alleged in the complaint, in June of 2023, a fence on Plaintiffs' property was adorned with signs or flags with political messages such as "ABORTION IS NOT HEALTH CARE," "FUCK BIDEN," "DON'T TREAD ON MY UTERUS," "PROTECT WOMEN'S RIGHT TO CHOOSE," and "SCIENCE IS REAL, BLACK LIVES MATTER, NO HUMAN IS ILLEGAL, LOVE IS LOVE, WOMEN'S RIGHTS ARE HUMAN RIGHTS, KINDNESS IS EVERYTHING." (Doc. 1 at 3-4). On June 7, 2023, Plaintiffs received a letter via certified

mail signed by the Town Council's President informing them that the Town had received complaints about their flags and signs, and that Plaintiffs were required to obtain a certificate of appropriateness regarding the signage. The letter cited various provisions of the Town's Land Development Code and further stated that Plaintiffs may be in violation of provisions of the code pertaining to signage that presents a traffic hazard or is harmful to minors. (Doc. 1-1). The letter stated that the "non-conforming signage must be removed within ten (10) days of receipt" of the notice, otherwise Plaintiffs would be subject to code violations. (Doc. 1-1). The letter, however, did not specifically describe or identify which signs or flags were the subject of the letter and/or constituted potential code violations. (Doc. 1-1).

Soon thereafter, on June 19, 2023, Plaintiffs initiated this action under 42 U.S.C. § 1983 and the First and Fourteenth Amendments for declaratory, injunctive, and equitable relief and damages. In sum, Plaintiffs allege that the relevant sections of the Land Development Code are facially unconstitutional and that the Land Development Code has been unconstitutionally applied to them. (Doc. 1).

The case is now before the Court for consideration of Plaintiffs' amended motion to compel pertaining to both interrogatories and requests to produce. Defendant states that it timely responded to Plaintiffs' discovery requests but concedes that its initial responses were "largely objections." (Doc. 26 at 1). Defendant also does not dispute that its initial interrogatory answers were unverified. Defendant further recites that, after the Town received a letter from Plaintiffs' counsel challenging its objections, counsel for the parties conducted a lengthy conferral conference during which Plaintiffs did not agree to any sort of limitation on the scope of the requests. (Doc. 26 at 1-2). Nonetheless, based on the substance of the conferral conversation, Defendant revisited the requests and attempted "to provide amended responses

self-limiting the scope and caveated to provide the information it appeared Plaintiff was actually looking for." (Doc. 26 at 2). Nonetheless, Plaintiffs moved to compel, arguing that Defendant has engaged in stonewalling and delay (Doc. 24). The history of the parties' discovery dispute is well documented in the parties' briefs and in the numerous exhibits to Plaintiff's motion. (Doc. 24).

## II.   Legal Standards

Motions to compel discovery under Rule 37(a) of the Federal Rules of Civil Procedure are committed to the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). "The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Oliver v. City of Orlando*, No. 6:06-cv-1671, 2007 WL 3232227, at *2 (M.D. Fla. Oct. 31, 2007).

The moving party "bears the initial burden of proving that the information sought is relevant." *Douglas v. Kohl's Dep't Stores, Inc.*, No. 6:15-cv-1185, 2016 WL 1637277, at *2 (M.D. Fla. Apr. 25, 2016) (quoting *Moore v. Lender Processing Servs. Inc.*, No. 3:12-cv-205, 2013 WL 2447948, at *2 (M.D. Fla. June 5, 2013)). Relevancy is based on the "tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." *Garcia v. Padilla*, No. 2:15-cv-735, 2016 WL 881143, at *2 (M.D. Fla. March 8, 2016) (quoting Fed. R. Evid. 401).

Proportionality requires counsel and the Court to consider whether relevant information is discoverable in view of the needs of the case. In making this determination, the Court is guided by the non-exclusive list of factors in Rule 26(b)(1). *Graham & Co., LLC v.*

*Liberty Mut. Fire Ins. Co.*, No. 2:14-cv-2148, 2016 WL 1319697, at *3 (N.D. Ala. April 5, 2016). "Any application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses." *Id.* (quoting *Witt v. GC Servs. Ltd. P'ship*, 307 F.R.D. 554, 569 (D. Colo. 2014)).

In order to frame the discovery, it is essential to determine the purpose of the discovery. As the commentary to Rule 26 explains: "A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them." Fed. R. Civ. P. 26. Then, of course, it is the "Court's responsibility, using all the information provided by the parties, . . . to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

## III.   Discussion

Plaintiffs' motion to compel largely arises from the legal dispute that is at the heart of the case. Plaintiffs contend that the Town's Land Development Code is unconstitutional or has been unconstitutionally applied to them regarding their display of flags and signs at their home in McIntosh's historic district. Generally speaking, Plaintiffs' discovery requests seek information and documents relevant to the history of the Land Development Code, the meaning and interpretation of the terms within the Code, as well as how and why it has been applied to Plaintiffs or others.

First, the Court will make the following general observations, and more specific analysis of the disputed requests will follow. As a general matter, under Rule 26, the Court observes that the parties would be entitled to discovery on any nonprivileged material that is

relevant to any party's claim or defense and proportional to the needs of the case. Here, given Plaintiffs' claims, it stands to reason that all documents pertaining to the Town's enforcement of the Land Development Code as to Plaintiffs, as well as documentation regarding relevant complaints, communications, and meetings regarding Plaintiffs' display of the signs or flags, would be discoverable. Likewise, given Plaintiffs' claim that the Land Development Code has been unconstitutionally applied to Plaintiffs, it also stands to reason that information and documentation regarding other applications of the same or similar provisions of the Land Development Code are discoverable.

The Court notes that when pressed to specify which flags or signs were the subject of the June 7, 2023, letter to Plaintiffs, Defendant has repeatedly asserted, both in its answer and its response to the motion to compel that the letter "speaks for itself," or that "Defendant relies on the language within the June 7, 2023, letter." (Doc. 10 & Doc. 26 at 14). To the extent that the letter "speaks for itself," however, it is conspicuously silent regarding facts highly relevant to the key issues in this case.

Further, the Court appreciates that the Town of McIntosh "is a small town, with a Town Manager who wears many hats, including responding to discovery requests and Public Records Requests, along with her regular duties managing the Town." (Doc. 26 at 2). That circumstance, however, is more relevant to a request for an extension of discovery deadlines or a discussion of what information is proportional to the needs of the case than to whether certain information is discoverable. The parties are reminded that the Court has the discretion to manage discovery deadlines as appropriate based on unique challenges and scheduling constraints such as those created by limited personnel.

Lastly, the Court notes that the parties have engaged in repeated attempts to confer regarding the discovery disputes (many of those attempts initiated by Plaintiffs' counsel) as detailed in both Plaintiffs' motion and Defendant's response, and the relevant exhibits. Notably, Defendant provided its verified amended answers to interrogatories from Plaintiff Jason Jones, amended responses to Plaintiff Jason Jones' request to produce, and an amended privilege log on March 14, 2024, only after Plaintiffs' motion to compel was filed.

### A.   Discovery Requests

The Court will now proceed with a more detailed discussion of the relevant discovery requests.

#### 1.   Interrogatories #1, #3, #4, #5, #6, #16

The Court notes Plaintiffs' motion to compel appears to be largely resolved or moot as to interrogatories numbered 1, 3, 4, 5, 6 & 16. Defendant states that it has answered each and provided relevant documentation to the best of its ability. (Doc. 26 at 5-9). Meanwhile, Plaintiffs did not seek leave to file a reply contending otherwise. In the interests of efficiency and given the apparent mootness of the motion to compel as to these interrogatories, at present the Court will refrain from a detailed analysis of each of the numerous subparts of these interrogatories and Defendant's objections thereto. While these requests appear to be resolved at this stage of the litigation, this conclusion is without prejudice to Plaintiffs' right to renew their discovery requests or motion to compel if warranted as litigation progresses.

#### 2.   Interrogatory #7

INTERROGATORY NO. 7: Did the Defendant or anyone on its behalf make a claim to any insurance provider regarding this lawsuit (e.g., Case No. 5:23-cv-00380) or the Plaintiffs? If so, for each claim, identify: the date it was made, how it was made (email, by telephone, in-person, etc.), the person(s) who made it, the policy(ies) of insurance under which it was made (including:

- 6 -

insurer's complete name, insurer's address; policy number; effective dates of coverage; named insured; additional insureds; date of issue; type of policy; policy limits; and deductible); the date of each insurer's response; whether the claim was denied and all grounds asserted therefore, whether a Reservation of Rights was issued and all grounds asserted therefore, and name and address of the agent in the sale of the policy to Defendant; and the current custodian of all claims, replies, and responses.

Defendant objects to this interrogatory as seeking "attorney-client privileged and work-product privileged information." (Doc. 26 at 9). Defendant further states that it has provided an amended privilege log. Meanwhile, it is not readily apparent why the information sought by this request would be relevant, and Plaintiffs' motion to compel fails to specifically address this interrogatory. Plaintiffs' motion to compel is denied as to Interrogatory #7.

### 3. *Interrogatory #9*

INTERROGATORY NO. 9: Identify all financial accounts the Town of McIntosh currently has (2023 thru present) and had in 2020, 2021, and 2022. For each account identify: the current financial institution/entity, address, account number, account type, and the complete name under which the account is/was held; all signators; the current balance; the current City of McIntosh records custodian for account records; and all City of McIntosh agents, personnel, contractors, and employees with on-line access to the account.

As to this interrogatory, Defendant objects on the basis that it is overly broad, vague, ambiguous and unduly burdensome. The Court finds that this request is at least overly broad to the extent that it is not proportional to the needs of the case, and it is not currently apparent why the information sought would be relevant. Further, Plaintiffs' motion fails to specifically address this interrogatory. Plaintiff's motion to compel is denied as to Interrogatory #9.

### 4. *Interrogatory #10*

INTERROGATORY NO. 10. Identify each and every "superseding cause," Intervening cause," and "independent cause" the Town of McIntosh claims caused or contributed to

> Plaintiffs' damages, and for each cause, explain in specific
> factual detail how it allegedly caused and/or contributed.

Defendant objects to this interrogatory on the basis that it is overly broad, vague, ambiguous, and not limited to time and scope. Defendant also states that it is "unclear as to what is meant to 'superseding cause,' 'intervening cause,' and 'independent case.' Defendant does not know what Plaintiff is asking." (Doc. 26 at 10). A review of the pleadings in this case, however, reveals that the language inquired about appears to be quoted directly from Defendant's own answer and is one of 31 different affirmative defenses pled at paragraph 106. (Doc. 10 at 15). As one of its many affirmative defenses, Defendant contends that Plaintiffs' damages were "caused by an intervening and/or superseding and/or independent cause, and this Defendant is not liable." (Doc. 10 at 15).

Interrogatory #10 is, in effect, a contention interrogatory, a form of discovery that is recognized to be somewhat disfavored. *See Oliver v. City of Orlando*, No. 606CV-1671-ORL-31DAB, 2007 WL 3232227, at *3 (M.D. Fla. Oct. 31, 2007) (discussing contention interrogatories). The Middle District Civil Discovery Handbook[1] provides the following guidance:

> CONTENTION INTERROGATORIES. Interrogatories that generally require the responding party to state the basis of particular claims, defenses, or contentions in pleadings or other documents should be used sparingly and, if used, should be designed (1) to target claims, defenses, or contentions that the propounding attorney reasonably suspects may be the proper subject of early dismissal or resolution or (2) to identify and narrow the scope of unclear claims, defenses, and contentions. Interrogatories that purport to require a detailed narrative of the opposing parties' case are generally improper because they are overbroad and oppressive.

---

[1] https://www.flmd.uscourts.gov/civil-discovery-handbook.

Middle District Discovery at 23. Here, to the extent that the interrogatory is asking Defendant to reveal any factual information regarding events of which it is aware that would constitute a superseding cause, intervening cause or independent cause of Plaintiffs' damages, it is directed to do so.

     *5.    Interrogatory #11*

> INTERROGATORY No. 11. Identify each and every compelling interest the City of McIntosh claims is or was served by its definition of and/or interpretation of the definition of "Harmful to minors," "patently offensive to contemporary standards in the adult community as a whole with respect to what is suitable for viewing by minors," and "lacks serious literary, artistic, political, or scientific value" and explain how that interest is purportedly served by the definition/interpretation.

> ANSWER: Defendant objects to Interrogatory No. 11. As worded, this interrogatory is overly broad, vague, ambiguous and not limited to time and scope. Further, Defendant objects, insofar as this Interrogatory calls for a legal conclusion or argument.

Interrogatory #11 also appears to be a contention interrogatory. Consideration of this interrogatory in the context of this case suggests that it asks the Town to identify the compelling interests served by its definition and interpretation of language within the Town's Land Development Code regarding prohibition of signs deemed "harmful to minors" and defined within the code. The language referenced in the interrogatory is quoted directly from both the Land Development Code, Section 6.06.03, as well as the letter sent to Plaintiffs.

As to this interrogatory, Defendant's objections are overruled. In the spirit of the Middle District Civil Discovery Handbook's guidance regarding contention interrogatories, Plaintiffs are entitled to receive an answer to this interrogatory to clarify and narrow the scope of issues in this case. In answering this interrogatory, Defendant need not provide a detailed

narrative, but may summarize the interests served. Defendant's answer, also, is subject to amendment or supplementation going forward in accordance with the Federal Rules of Civil Procedure and the Local Rules.

> 6.    *Interrogatories #12, #13, & #14*

Interrogatories #12, #13 & #14 seek similar information, resulted in nearly identical objections, and are therefore discussed together.

> INTERROGATORY NO. 12: Identify each and every meeting held (including when and where it was held) and each and every person (by name, address, telephone, and if known, email, title/role and relationship to the Town of McIntosh) in attendance wherein the definition of "Harmful to minors" (LDC Sec. 1.08.) was discussed, decided, referenced, debated, and/or voted upon, and for each all meeting minutes, notes, records, diaries, logs, reports, memoranda, recordings, documents, and any other meeting memorialization used, kept, and/or maintained, and for each the current custodian.
>
> ANSWER: Defendant objects to Interrogatory No. 12. As worded, this interrogatory is overly broad, vague, ambiguous, unduly burdensome and not limited to time and scope. Specifically, this Interrogatory is not limited in any way in time or scope.
>
> Notwithstanding Defendant's objection that this interrogatory is overly broad, vague, ambiguous, unduly burdensome and not limited to time and scope, pursuant to the conferral conference, the Town amends its Answer as follows:
>
> The Town's Land Development Code Section 1.08 effective on the date of incident subject to this litigation is an accumulation of Town Ordinances passed beginning from 1990. Therefore, as worded, Plaintiff's Interrogatory seeks meeting minutes, notes, records, diaries, logs, reports, memoranda, recordings, and documents for the past thirty (30) years. In an attempt to limit the time frame to May 12, 2022, through present, the Town did not decide, debate or vote upon the definition of "Harmful to minors" (LDC Sec. 1.08.). In reference to the phrase "harmful to minors" being discussed and referenced at Town Council Meetings, and in compliance with Fed.R.Civ.P. 33(d),

> Defendant refers Plaintiffs to the materials produced by Defendant's amended response to Plaintiff, Plaintiff, Jason Jones', First Request to Produce; see folder named "RRTP 4, 12, 13, 14." Defendant refers Plaintiffs to same regarding attendance at the meetings, however, there is no way to confirm all as the meetings are public and there is no requirement that each attendee identify themselves.

> Other than specifically noted herein, Defendant maintains the objection timely raised on February 7, 2024.

Interrogatory #13 is parallel to #12, but asks for identification of meetings, and attendees in attendance when "what is and isn't 'patently offensive to contemporary standards in the adult community as a while with respect to what is suitable for viewing by minors'" (citing the Section 1.08 of the Land Development Code) was the subject of discussion or decision. (Doc. 26 at 11). Interrogatory #14 is also parallel but asks for identification of meetings and attendees in attendance when "what does and doesn't 'lack serious literary, artistic, political, or scientific value'" was the subject of discussion or decision. (Doc. 26 at 12). All three of these interrogatories resulted in the same objections and answer by Defendant.

Notably, the Town represents that its Land Development Code is an accumulation of town ordinances passed beginning in 1990. Yet, in responding to this interrogatory, the Town has only limited the time frame to May 12, 2022, through present. Presumably, Plaintiffs' seek information regarding the original intent and history of the relevant provisions of the Land Development Code, information which likely dates prior to 2022. The Court finds that discovery over a broader time frame would be more appropriate under the circumstances. Accordingly, based upon records maintained by the Town and/or information and belief of Town employees or agents, the Town is directed to answer these three interrogatories

(Interrogatories #12, #13, & #14) to the best of its ability <u>for at least the past seven years through present</u>.

The Town's objections to these interrogatories are otherwise overruled, subject to the understanding that Town Council meetings are public and there is no requirement that each attendee identify themselves.

### 7.    Interrogatory #15

INTERROGATORY NO. 15: Identify each and every sign and flag that was the subject of the Defendant's June 7, 2023, letter to the Plaintiffs (Dkt. 1-1), and for each: whether Defendant has a photograph or video of it and when, why, and by whom (by name, address, telephone, and if known, email, title/role and relationship to the Town of McIntosh) it was taken and the current custodian; why it was not specifically identified in the letter; every reason it is contended to violate Defendant's LDC; every LDC it allegedly violates and how; and each and every person (by name, address, telephone, and if known, email, title/role and relationship to the Town of McIntosh) on the Defendant's Town Council and on its Historical Preservation Board who did not agree that the June 7, 2023, letter should be sent or otherwise disapproved that it was sent.

ANSWER: Defendant objects to Interrogatory No. 15. As worded, this interrogatory is overly broad, vague, ambiguous, unduly burdensome, not limited to time and scope. Essentially the request is six requests in one as it asks for six different lists of individuals and/or materials.

Notwithstanding Defendant's objection that this interrogatory is overly broad, vague, ambiguous, unduly burdensome and not limited to time and scope, pursuant to the conferral conference, the Town amends its Answer as follows:

Defendant relies on the language within the June 7, 2023, letter. The complaints subject to the June 7, 2023, letter is based on an accumulation of complaints submitted by residents and in compliance with Fed.R.Civ.P. 33(d), Defendant refers Plaintiffs to the documents produced by Defendant's amended response to Plaintiff, Jason Jones', First Request to Produce; see folder named "RRTP 5."

Additionally, though it is unclear what is being asked, Defendant is in possession of photographs within the folder named "RRTP AMD 1." The photographs in the Town's possession are an accumulation taken by Mayor Marshall Roddy on June 4, 2023, and October 14, 2023. Also, screenshots of social media from the Town Manager on June 7, 2023. The custodian is Jessica Gonzales, Town Manager/Town Clerk.

The remainder of Plaintiffs question is based on a misinterpretation of Defendant's letter. In regard to who did not agree on the Defendant's Town Council and on its Historical Preservation Board that the June 7, 2023, letter should be sent, it is unclear what time frame this question is directed and what is meant by "not agree."

Interrogatory #15 warrants detailed discussion as it seeks information that is directly at the crux of this case. To begin, it appears that Defendant has at least partially answered this interrogatory by providing documents and information regarding photographs of the flags and signs, as well as identifying the custodian of those records. Further, Defendant's objection that the interrogatory is vague and ambiguous is due to be sustained to the extent that the interrogatory asks for "each and every person. . . on the Defendant's Town Council and on its Historical Preservation Board who did not agree that the June 7, 2023, letter should be sent or otherwise disproved that it was sent." (Doc. 26 at 13). To the extent such information is discoverable, it could be sought via amended discovery requests or, perhaps more appropriately, via deposition testimony.

Plaintiffs, however, are entitled to have Defendant identify "each and every sign and flag" that was the subject of the letter, why it was not specifically identified in the letter, every reason it is contended to violate Defendant's Land Development Code, and every provision it allegedly violates and how. Simply put, this information is relevant to the claims and defenses in this case. And, while Interrogatory #15 is at least in part a contention interrogatory, it seeks critical information necessary to clarify or narrow the scope of the

- 13 -

claims and defenses in this case. It matters greatly whether the subject of Defendant's letter was, for example, a flag stating "Fuck Biden," or "Protect Women's Right to Choose," or "Don't Tread on my Uterus," or perhaps a flag displaying a provocative (or even pornographic) image or gesture, or perhaps a simple flag declaring, "Spring is in Bloom" or "Go Gators," or some combination of the above. Implications under both the Town's Land Development Code and First Amendment Law could differ significantly in each instance. Indeed, the Supreme Court has recognized the role that displaying signs at one's residence plays in freedom of expression. *See City of Ladue v. Gilleo*, 512 U.S. 43, 114 S. Ct. 2038, 2039, 129 L. Ed. 2d 36 (1994) (holding that a city ordinance restricting yard signs violated resident's right to free speech, acknowledging the unique role of residential signs in enabling citizens to take part in the public debate, and stating "[d]isplaying a sign from one's own residence carries a message quite distinct from placing the same sign someplace else, or conveying the same text or picture by other means, for it provides information about the speaker's identity, an important component of many attempts to persuade.")

Identification of the particular signs or flags at issue is particularly relevant because the Town failed to specify which signs or flags constituted code violations in its June 7, 2023, letter. Presumably, Plaintiffs are still unaware which flags or signs were the target of the Town's attempts to enforce its Land Development Code, or the purported reasons why the Town demanded that the flags and signs be removed. Accordingly, subject to the explanation and findings above, the Town is directed to answer Interrogatory No. 15 to the best of its ability. While Defendant need not provide a detailed narrative, Defendant should identify each and every flag or sign that was the subject of the June 7, 2023, letter, state why it was not specifically identified in the letter, state every reason it was contended to violate the Land

Development Code, and identify every provision of the code the signs or flags allegedly violated and how.

> 8.    *Request to Produce #1*

>> REQUEST NO. 1: Excluding attorney-client and work product privileged material after proper identification and provision of the requisite privilege log: All documents exchanged between you and any third-party pertaining to signage and/or flags on Plaintiffs' (JASON JONES' and HEATHER CLARK's) property.

>> RESPONSE: Objection. This Request is vague, ambiguous, overbroad, unduly burdensome, and not limited in scope or time. Specifically, Defendant is unclear as to who is meant by "you. Additionally, there is no way to know "all documents exchanged," other than to physically review each Town's current and former employees' communications for an indefinite period of time.

>> Notwithstanding the objection that this Request is overly broad, vague, ambiguous, unduly burdensome, and not limited to time and scope Defendant amends its response as follows: See folder named "RRTP AMD 1." Other than specifically noted herein, Defendant maintains the objection timely raised on February 7, 2024.

While it appears that Defendant has at least partially responded to this request, the Court notes that its objections are largely due to be overruled. In particular, Defendant's objection to the term "you" is disingenuous in the context of this litigation where the Town of McIntosh (a legal entity with officers, employees and agents acting on its behalf) is the sole named defendant. As the Middle District Civil Discovery Handbook provides:

>> Interrogatories should be interpreted reasonably, in good faith, and according to the meaning the plain language of the interrogatory would naturally import. When in doubt about the meaning of an interrogatory, the responding party should give it a reasonable interpretation (which may be specified in the response) and offer an answer designed to provide, rather than deny, information.

Middle District Discovery at 21-22.

Defendant is directed to produce all documents and or communications between the Town (including its officers, employees, and agents acting on its behalf) pertaining to signage and/or flags on Plaintiffs' property. When considered with an overlay of common sense and in the context of this case, this request is not inappropriately vague, ambiguous, overly broad or unduly burdensome. While it is not limited in time, the appliable time frame would necessarily be limited to the latter of when either Plaintiffs became Town residents or began displaying signs or flags. Review of current and former employee communications is precisely what is generally required in routine discovery, and one would surmise that the scope of that review would be manageable given the likely modest number of officers, employees, and agents of the Town. The parties are encouraged to work together in good faith, if necessary, to agree on an appropriate scope for a suitable records search.

9.      *Request to Produce #2*

REQUEST NO. 2: All documents exchanged between the TOWN of McINTOSH/on its behalf with any insurance entity pertaining to Plaintiffs' signage and/or flags. This REQUEST expressly includes all communications notifying an insurer of Plaintiffs' claim(s) against the TOWN of McINTOSH involving the Plaintiffs' signage and/or flags; the insurer's response; requests for coverage, denial of coverage, reservation of rights, etc.

RESPONSE: Objection. This Request seeks attorney client privileged work product, see Privilege Log.

Notwithstanding the objection that this Request is overly broad, vague, ambiguous, unduly burdensome, and not limited to time and scope Defendant amends its response as follows: See Defendant's Amended Privilege Log.

For the same reasons discussed above as to Interrogatory #7 and in the absence of any justification or specific argument as to the relevance of the information requested, Plaintiffs' motion to compel is denied as to Request to Produce #2.

> 10.    *Request to Produce #3*

> REQUEST NO. 3: Excluding attorney-client and work product privileged material after proper identification and provision of the requisite privilege log: All files maintained, created, and preserved by you pertaining to the Plaintiffs.

> RESPONSE: Objection. This Request is vague, ambiguous, overbroad, unduly burdensome, and not limited in scope or time. It is unclear what is meant by "files."

When considered in the context of this case, Defendant's objections to this request are due to be overruled, with the exception of Defendant's objection regarding properly identified attorney-client and work project privileged material. With the exception of properly identified privileged material, Defendant is directed to produce "[a]ll files maintained, created, and preserved by you pertaining to the Plaintiffs." In the context of this case, the request is neither overbroad nor unduly burdensome. Such documents would likely relate to the Plaintiffs' status as town residents or the incidents giving rise to the claims in this case, which all would be relevant.

> 11.    *Request to Produce #10*

> REQUEST NO. 10: All emails, texts, and other written communications exchanged between Town Council and Committee Members pertaining to Plaintiffs and signage and/or flags.

> RESPONSE: None identified pursuant to objection.

It is somewhat unclear from Defendant's response whether Defendant conducted an appropriate search for the items sought by Request #10, or whether Defendant is standing on an unspecified objection. In any event, and subject to objections based on privilege, Plaintiffs

are entitled to discovery of the items sought by Request #10. If Defendant has not done so already, Defendant is directed to conduct a good faith search for the requested items and produce them to Plaintiffs.

> 12.     *Requests to Produce #12, #13, #14*

> REQUEST NO. 12: All material identified in response to Interrogatory No. 12 (in the Interrogatories served contemporaneously with these Requests [definition "[h]armful to minors"]).

> RESPONSE: Notwithstanding Defendant's original objections, the Town's Land Development Code Section 1.08, effective on the date of incident subject to this litigation, is an accumulation of several Town Ordinances which were passed in the 1990's. In an effort to limit the time frame of this Request, Defendant refers Plaintiffs to the documents produced in the folder named "RRTP AMD 4, 12, 13, 14."

> Other than specifically noted herein, Defendant maintains the objection timely raised on February 7, 2024.

Similar to Interrogatories # 12, #13 and #14, Requests to Produce #12, #13, and #14 are parallel, and each resulted in the same response and objection. The requests to produce seek the documents identified in response to their interrogatory counterparts.

As discussed above regarding the interrogatories, the Town represents that its Land Development Code is an accumulation of town ordinances passed beginning in 1990. Yet, in responding to these discovery requests, the Town has limited the time frame to May 12, 2022, through present. As stated previously, the Court finds that discovery over a broader time frame would be more appropriate under the circumstances. Accordingly, based upon records maintained by the Town and/or information and belief of Town employees or agents, the Town is directed to produce all documents responsive to these requests to the best of its ability for at least the past seven years through present. The Town's objections to these requests are

otherwise overruled, subject to the understanding that Town Council meetings are public and there is no requirement that each attendee identify themselves.

### 13.    *Request to Produce #15*

> REQUEST NO. 15: All material identified in response to Interrogatory No. 15 (in the Interrogatories served contemporaneously with these Requests [Plaintiffs' signs and flags]).

> RESPONSE: Notwithstanding Defendant's objection and in an effort to limit the time frame of this Request, Defendant refers Plaintiffs to the documents produced in the folders named "RRTP AMD 1" and "RRTP AMD 5."

As discussed above regarding Interrogatory #15, Plaintiffs are entitled to discovery on the topics set forth in Interrogatory #15. To the extent that non-privileged documents exist that are identified in response to Interrogatory #15, the Defendant is directed to produce those documents. As to Defendant's objections and the proper scope of discovery on this topic, the Court's discussion above regarding Interrogatory #15 applies equally to Request to Produce #15.

### 14.    *Requests to Produce #9 & #16*

As to Requests to Produce #9 and #16, Defendant states that it has answered each and provided relevant documentation to the best if its ability. Meanwhile, Plaintiffs did not seek leave to file a reply contending otherwise. In the interests of efficiency and given the apparent mootness of the motion to compel as to these requests, at present the Court will refrain from a detailed analysis of each of the numerous subparts of these requests and Defendant's objections thereto. Although these requests appear to be resolved at this stage of the litigation, however, this conclusion is without prejudice to Plaintiffs' right to renew their discovery requests or motion to compel if warranted as litigation progresses.

### B.    Attorney's Fees and Expenses

The Court now turns to the issue of attorney's fees and expenses which are sought by Plaintiffs. Plaintiffs seek attorney's fees and expenses incurred in bringing the motion to compel. While Defendant contends that its supplemental discovery responses render Plaintiffs' motion moot, Defendant concedes that its amended and supplemental responses and an amended privilege log were not provided to Plaintiffs until March 14, 2024, the day after Plaintiffs' motion to compel was filed. Defendant also does not dispute that its initial responses to interrogatories were "unverified." (Doc. 24 at 5).

Under Federal Rule of Civil Procedure 37(a)(5)(A), if the Court grants a motion to compel, then the Court must require the respondent, the respondent's attorney, or both to pay the movant's reasonable expenses, including attorney's fees, incurred in making the motion. If, however, "the opposing party's nondisclosure, response or objection was substantially justified" or "other circumstances make an award of expenses unjust," the court must not order payment. Fed. R. Civ. P. 37(a)(5)(A).

Here, the undersigned has granted Plaintiffs' motion in part. Further, the record reflects that Defendant only provided its verified answers to interrogatories and supplemental discovery responses after the motion to compel was filed. Accordingly, by written response filed within 14 days of the entry date of this Order, Defendant shall show cause why Plaintiffs should not be awarded attorney's fees and expenses incurred in bringing the motion to compel.

### C.    Further Discovery

Finally, the Court notes that the posture of the parties' discovery dispute leaves some uncertainty as to whether any additional discovery requests remain in dispute. For example,

Plaintiffs' motion generally addressed significant deficiencies in Defendant's responses as of that date. Only after the motion was filed did Defendant then provide its amended and supplemental responses. Meanwhile, Defendant's response to the motion to compel specifically addresses all the requests discussed above, but Defendant contends that there have been no objections to Amended Responses to Plaintiff Heather Clark's Request to Produce and that it has fully responded to it.

The Court has made every effort to address and resolve all outstanding discovery disputes. Going forward, the parties are encouraged to work together in the spirit of the Local Rules and the Middle District Discovery Handbook. The parties are reminded of their obligations under Local Rule 3.01(g) to meet and confer in a good faith effort to narrow and resolve issues prior to filing any future motions.

## IV.    Conclusion

Upon due consideration, it is Ordered that:

1.  Plaintiffs' motion to compel (Doc. 24) is GRANTED in part and DENIED in part as set forth in this Order.

2.  On or before May 31, 2024, Defendant Town of McIntosh shall provide all supplementary answers to interrogatories and supplemental responses to requests to produce required by this Order.

3.  By written response filed within 14 days of the entry date of this Order, Defendant shall show cause why Plaintiffs should not be awarded attorney's fees and expenses incurred in bringing the motion to compel under Rule 37 of the Federal Rules of Civil Procedure.

    **DONE** and **ORDERED** in Ocala, Florida on April 22, 2024.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties